IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHESTER MARK,

        Plaintiff,

v.                                                      CIV 16-0357 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and

Remand (*Doc. 16*), filed November 28, 2016. Pursuant to 28 U.S.C. § 636(c) and

Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the

presiding judge and entering final judgment. *Doc. 19.* Having reviewed the parties'

submissions, the applicable law, and the relevant portions of the Administrative Record,

the Court will grant the Motion.

## I.    Procedural History

In March 2013, Plaintiff protectively filed applications with the Social Security

Administration for disability insurance benefits (DIB) and supplemental security income

(SSI). *AR* at 171-86.[2] At the time of his applications, Plaintiff alleged a disability onset

---

[1] Effective January 20, 2017, Nancy A Berryhill became the Acting Commissioner of the Social
Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy
A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the
defendant in this suit.

[2] Documents 12-1 through 12-29 comprise the sealed Administrative Record ("*AR*"). The Court
cites the Record's internal pagination, rather than the CM/ECF document number and page.

date of January 31, 2010, due to "lower back injury, diabetes, nerve damage, HBP." *AR* at 214.

The agency denied Plaintiff's claims initially and upon reconsideration. *AR* at 113, 119. Plaintiff requested review and, after holding a *de novo* hearing, Administrative Law Judge Michael S. Hertzig ("the ALJ") issued a partially favorable decision, finding that Plaintiff did not meet the statutory requirements for disability prior to August 1, 2013, but that he became disabled on that date and continued to be disabled through the date of his decision. *AR* at 9-23. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 24, 2016. *AR* at 1. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[3]

_____

[3] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four

Here, the ALJ found at Step One of the process that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. *AR* at 15. At Step Two, he determined that Plaintiff suffered from the severe impairments of "diabetes mellitus, disorders of the back and diabetic neuropathy," *AR* at 15, and at Step Three, he concluded that these impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 16.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. § 404.1545(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (emphasis in original).

In his first RFC determination, the ALJ found that prior to August 1, 2013, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) with the following restrictions:

> The claimant could only occasionally climb ramps, stairs and never climb ropes, ladders or scaffolds. He could frequently stoop, crouch and crawl and unlimitedly balance and kneel. He had to avoid concentrated exposure to extremes of cold, wetness, vibrations and hazards such as machinery, heights, etc.

*AR* at 16. The ALJ also made a second RFC determination – that beginning on August 1, 2013, Plaintiff had the RFC to perform sedentary work with the same restrictions enumerated in the first RFC but with the additional restriction that he could "only stand

---

whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

and walk for less than two hours out of eight." *AR* at 19. In other words, on August 1, 2013, Plaintiff's RFC, as determined by the ALJ, shifted from light work to sedentary work with a new two-hour standing/walking restriction.

Employing his first RFC, which accounted for Plaintiff's limitations prior to August 1, 2013, the ALJ determined at Step Four that Plaintiff was able to perform his past relevant work as a cashier, cook, and assistant manager, and, accordingly, that he was not disabled. *AR* at 21. In contrast, when employing his second RFC, which accounted for Plaintiff's additional limitations beginning on August 1, 2013, the ALJ concluded that Plaintiff was unable to perform his past relevant work. *AR* at 21. Moving on to Step Five, the ALJ determined that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform based on the second RFC. *AR* at 22. As such, the ALJ determined that Plaintiff was disabled as of August 1, 2013. *AR* at 22.

## II.    Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). However, in making this determination, this Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citation omitted).

### III.    Analysis

Although Plaintiff received a partially favorable determination – having been found disabled beginning August 1, 2013 – he takes issue with the onset date determined by the ALJ. While Plaintiff initially alleged that his disability began January 31, 2010, at the time of his administrative hearing he amended this onset date to April 10, 2011. *AR* at 34. As such, the period now at issue on Plaintiff's Motion to Remand is the period between Plaintiff's alleged onset date and the date of his disability as determined by the ALJ – from April 10, 2011 to August 1, 2013. According to Plaintiff, the ALJ's treatment of the opinions of his treating physician, Chris Percy, M.D., produced an erroneous onset date.

Plaintiff maintains that Dr. Percy's 2013 and 2014 opinions should have been given controlling weight. *Doc. 16* at 6-9. He notes that he and Dr. Percy had a regular and long-standing relationship, and he suggests that Dr. Percy's statements were supported by the medical evidence of record, including records from other doctors at Northern Navajo Medical Center and at Four Corners Spine and Pain. *Id.* at 8. Likewise, he insists that the functional abilities determined by Dr. Percy were consistent with the household tasks that he completed. *Id.* He notes that the ALJ himself found Dr. Percy's 2014 opinion consistent with the other medical evidence, affording that opinion "great weight." *Id.* (citing *AR* at 21). He suggests that if Dr. Percy's opinions – both the 2013 opinion and the 2014 opinion – had been given controlling weight, however, the ALJ would have found him disabled as of his amended onset date, April 10, 2011. *Id.*

The Commissioner admits that the ALJ's opinion did not satisfy SR 96-2p, which requires that an ALJ give good reasons for the weight assigned to a treating source's

opinion – reasons that are sufficiently specific to make clear the weight given and the reasons for that weight. *Doc. 23* at 9, 10. She concedes: "the ALJ's discussion of Dr. Percy's May 2013 opinion fell short of these requirements." *Doc. 23* at 10. The Commissioner insists, however, that the "absence of ALJ discussion about Dr. Percy's May 2013 opinion does not warrant reversal, where the opinion was controverted by Dr. Percy's own notes, by every other medical source, and by Plaintiff's admissions about his abilities in that period." *Doc. 23* at 8. The Commissioner maintains that any "articulation deficiency" does not warrant reversal. *Id.* at 9. Under the circumstances here, the Court disagrees.

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Because the ALJ does not affirmatively state whether either of Dr. Percy's opinions are entitled to controlling weight, he may have skipped the first step under the treating physician analysis and leapt directly to the second. In the past, this Court held that skipping the first step in the analysis was reversible error. *Wellman v. Colvin*, CIV

13-1122 KBM, Doc. 19 (D.N.M. Dec. 3, 2014). In fact, this result appeared mandatory under established Tenth Circuit law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is *necessary* so that we can properly review the ALJ's determination on appeal.") (emphasis added); *see also Robinson*, 366 F.3d at 1083 (noting that the ALJ failed to expressly state whether an opinion would be afforded controlling weight); *Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300).

However, the Tenth Circuit has recently indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight," there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Percy's opinions, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination.").

Here, the ALJ ascribes "great weight" to Dr. Percy's 2014 opinion, noting that his "assessment is supported." *AR* at 21. He stops short of giving the opinion "controlling"

weight, however, and fails to offer any specific explanation for doing so. As to Dr.

Percy's 2013 opinion, the ALJ does not specify any weight given to that opinion; indeed,

he fails to even mention it in his decision.

Even if Dr. Percy's 2013 and 2014 opinions were not entitled to controlling

weight, "[t]reating source medical opinions . . . must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527" at the second step of the ALJ's analysis. *Watkins v*,

350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). The Tenth Circuit has

summarized these factors as:

> the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported
> by relevant evidence; (4) consistency between the opinion and the
> record as a whole; (5) whether or not the physician is a specialist in the
> area upon which an opinion is rendered; and (6) other factors brought to
> the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quoted authority omitted).

An ALJ is "not required 'to apply expressly each of the six relevant factors in

deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715

(10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007)). Even so, the Tenth Circuit has cautioned that "[i]f the ALJ rejects [an]

opinion completely, he must then give specific, legitimate reasons for doing so."

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins v.

Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)). Typically, so long as an ALJ provides

good reasons for discounting or rejecting a medical opinion, his or her failure to specify

the weight given that opinion is excusable.  The question becomes, then, whether the

ALJ offered legitimate reasons for giving Dr. Percy's 2013 and 2014 opinions less than controlling weight.

According to Dr. Percy, the Physical Residual Functional Capacity Questionnaire ("RFC form") that he completed on May 20, 2013, described Plaintiff's symptoms and limitations since 2010. *AR* at 418-22. In the RFC form, Dr. Percy indicated that he had been treating Plaintiff for more than a decade, seeing him approximately every three months. *AR* at 418. Diagnosing Plaintiff with lumbar disc degeneration with radiculopathy and plantar fasciitis, Dr. Percy offered a prognosis of "slow decline." *AR* at 418. While he indicated that Plaintiff was being treated with steroid injections, he explained that Plaintiff was experiencing only "minimal relief." *AR* at 418.

The ALJ failed to mention any of these 2013 opinions by Dr. Percy, leaving little clue in his decision as to whether he considered them or why they were omitted from his RFC determination. However, an exchange between the ALJ and Plaintiff's counsel at the administrative hearing sheds some light on why he may have failed to discuss them. After suggesting that Plaintiff was limited to sedentary work "because of his medical impairments, particularly his back pain," the ALJ asked Plaintiff's attorney which medical evidence "put[] her client at sedentary." *AR* at 34-35. Before the attorney could answer, the ALJ quickly followed up with ***"[a]nd don't tell me the RFC form that is illegible***." AR at 36 (emphasis added). Given that the ALJ omitted any discussion of Dr. Percy's May 2013 RFC form, either in his decision or at the hearing, it appears that it was this form, prepared by Dr. Percy, which the ALJ characterized as illegible.

While there are parts of Dr. Percy's handwritten RFC form that are somewhat difficult to decipher, there are also relevant portions of that form that are quite clear.

That is, Dr. Percy expressed a number of opinions through the unambiguous checking of boxes on the RFC form. For example, he opined that Plaintiff would be able to stand or walk less than 2 hours out of the day. *AR* at 420. While he determined that Plaintiff could sit for at least 6 hours, he indicated that he would need to alternate between sitting and standing or walking approximately every 30 minutes. *AR* at 419-20. When engaged in occasional standing or walking, Dr. Percy suggested that Plaintiff would be required to use a cane or other assistive device. *AR* at 420. He specified that Plaintiff should only occasionally lift items weighing less than ten pounds and that he should never lift items weighing twenty or more pounds. *AR* at 420. Additionally, he opined that Plaintiff should never engage in twisting, stooping, crouching or squatting, climbing ladders, or climbing stairs. *AR* at 421. Dr. Percy estimated that, on average, he would expect Plaintiff to be absent from work as a result of impairments or treatment more than four days per month. *AR* at 421. None of these opinions can be characterized as illegible and, yet, none of the opinions are discussed in the ALJ's decision.

As to the portion of the RFC form that might be characterized as illegible, particularly the first page of the form, illegibility alone was an inadequate reason for the ALJ to wholly disregard the opinions therein. *See Howze v. Comm'r of Social Security*, No. 14cv0503, 2015 WL 5212054 (S.D. Ohio Sept. 8, 2015) (reasoning that the fact that the treating source opinions were "largely illegible" was an inadequate reason for failing to give them any weight). Indeed, if the ALJ determined that that the illegibility of the first page of 2013 RFC form rendered the balance of Dr. Percy's conclusions without sufficient support, he had a duty to recontact Dr. Percy for clarification of his opinion before rejecting it on that basis. *See Bryant v. Astrue*, No. 06cv1305 WEB, 2007 WL

2377079 (D. Kan. Aug. 14, 2007) (citing SSR 96-5p and concluding that the "largely illegible nature of the treatment notes also requires that [the treating physician] be recontacted"); *White v. Barnhart*, 287 F.3d 903 (2001) (noting that the inadequacy of evidence received from a treating physician may trigger the duty to recontact).

Social Security Ruling 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5P, 1996 WL 374183 (S.S.A. July 2, 1996). Here, the ALJ failed to articulate in his decision any reasons for disregarding or discounting Dr. Percy's May 2013 opinion. If, as he suggested at the administrative hearing, he found portions of the RFC form entirely illegible, this must have hindered his ability to determine whether the opinion should be given controlling weight. Yet his decision offers no insight into his analysis of that 2013 opinion or the weight to which it was entitled. Most importantly, the ALJ's failure to articulate in his decision why he discounted or rejected Dr. Percy's May 2013 opinion leaves this Court unable to discern whether he did so for legitimate reasons, and the Commissioner's post hoc rationalizations are inadequate to provide such reasons.

If Dr. Percy's 2013 opinions had been consistent with the ALJ's first RFC, express analysis of Dr. Percy's 2013 opinion might have been less critical. For, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). But, here, in order to reach his first RFC, the ALJ must

have rejected certain of Dr. Percy's 2013 opinions, including the following: that Plaintiff would be able to stand or walk less than 2 hours out of the day, that he would need to alternate between sitting and standing or walking approximately every 30 minutes, that he would be required to use a cane or other assistive device, that he should only occasionally lift items weighing less than ten pounds, that he should never lift items weighing twenty or more pounds, and that Plaintiff should never engage in stooping, crouching, squatting, or climbing stairs. If the ALJ had given controlling weight to these opinions, it would have rendered an earlier onset date.

In his June 15, 2014 letter, which the ALJ *did* discuss, Dr. Percy explained that he continued to serve as Plaintiff's primary treating physician and that the opinions he provided in his May 2013 RFC form remained "fully consistent with Mr. Mark's current physical status" at this time. *AR* at 567. In other words, Dr. Percy believed that the limitations that Plaintiff had at the time of his 2013 opinion were consistent with those that Plaintiff experienced in 2014. Dr. Percy's general impression was that Plaintiff "will continue to be limited by his chronic back pain and neuropathy for the foreseeable future." *AR* at 567. Specifically, he noted that Plaintiff continued to experience severe back pain shooting into his legs. *AR* at 567. He explained that imaging of Plaintiff's spite revealed "degenerative disc disease throughout his lumbar spine, with a broad-based disc bulge at L5-S1." *AR* at 567. Although he recounted that Plaintiff had received injections to treat his symptoms, which provided "some relief for about a month," he noted that Plaintiff was taking pain medication to relieve his worst symptoms. *AR* at 567. He described Plaintiff's back pain as "fairly stable." *AR* at 567.

Consistent with the functional limitations that he found in May 2013, Dr. Percy opined in his 2014 letter that Plaintiff would not be able to be on his feet for more than two hours in an eight-hour workday. *AR* at 567. As before, he estimated that Plaintiff would be unable to remain in a sitting position for more than 30 minutes and explained that he would require the freedom to shift between sitting and standing. *AR* at 567. Once again, he opined that Plaintiff would be unable to perform a job that required twisting, stooping, crouching or squatting, climbing ladders, or climbing stairs. *AR* at 567.

In addition to the symptoms attributable to the degenerative disc disease in Plaintiff's lumbar spine, Dr. Percy noted that Plaintiff had also "been experiencing worsening neuropathy symptoms in his feet." *AR* at 567. He explained that as a result of diabetic polyneuropathy, Plaintiff was experiencing decreased sensation to both feet, which limited his ability to stand for extended periods of time. *AR* at 567. Plaintiff suffered an ulcer on his right foot in August 2013, which required hospitalization and which, according to Dr. Percy, continued to cause decreased sensation near the wound. *AR* at 567. Additionally, Dr. Percy opined that Plaintiff's standing and walking tolerance was further limited by his plantar fasciitis, which had not been improved by inserts or anti-inflammatory medication. *AR* at 567.

The ALJ determined that Plaintiff became disabled on August 1, 2013 – between Dr. Percy's May 2013 opinion and his June 2014 opinion. But, significantly, Dr. Percy opined in June 2014 that Plaintiff's "physical status" at that time was "fully consistent" with the opinions in his May 2013 RFC form. *AR* at 567. His May 20, 2013 opinion, in turn, indicated that the limitations found therein applied ***as early as _2010_***. *AR* at 422.

Thus, if the ALJ had given controlling weight to these opinions by Dr. Percy, accepting that Plaintiff's condition in 2014 was consistent with his condition in May 2013 and that his May 2013 condition was consistent with his 2010 condition, he would have settled on an earlier onset date.

Ultimately, the Court finds that the ALJ failed to properly evaluate Dr. Percy's May 20, 2013 and June 15, 2014 opinions and that this failure adversely affected the determination of Plaintiff's disability onset date.

## IV. Conclusion

Plaintiff has demonstrated that the ALJ committed harmful, reversible error in this case by failing to properly weigh or consider the opinions of his treating physician, Chris Percy, M.D.  On remand, the ALJ should re-contact Dr. Percy to clarify any portions of this May 2013 opinion that the ALJ finds illegible or inadequate to support the opinions therein.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 16*) is **granted.**

**IT IS FURTHER ORDERED** that a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure be entered remanding this matter back to the Acting Commissioner for further proceedings consistent with this opinion.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent